**PHILLIPS CHEMICAL COMPANY,**
Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 5342.

United States Court of Appeals
Tenth Circuit.
Oct. 12, 1956.

D. E. Hodges, Bartlesville, Okl. (Rayburn L. Foster, Harry D. Turner and Darlene G. Anderson, Bartlesville, Okl., with him on the brief), for appellant.

Katherine H. Johnson, Washington, D. C. (George Cochran Doub and Samuel D. Slade, Washington, D. C., with her on the brief), for appellee.

Before HUXMAN, MURRAH and PICKETT, Circuit Judges.

MURRAH, Circuit Judge.

This is an appeal by Phillips Chemical Company from a judgment in the Northern District of Oklahoma in a suit by the government for overcharges in the sale of ammonium nitrate in violation of the General Price Ceiling Regulations (16 F.R. 808) under the Defense Production Act of 1950, 50 U.S.C.A.Appendix, § 2061 et seq.

Sustaining the government's motion for a summary judgment, the trial court held that the appellant had violated applicable ceiling price regulations when it discontinued freight equalization rates to its customers from July 1, 1952 through March 12, 1953. And, finding no wilful violation, judgment was entered for $131,362.22, the aggregate amount of freight differentials which would have been allowable on sales during the prosecution period if the practice had not been discontinued.

The timeliness of the complaint is challenged, but it was filed on June 26, 1953, alleging sales and deliveries within one year of that date as required by statute. 50 U.S.C.A.Appendix, § 2109. And see Schreffler v. Bowles, 10 Cir., 153 F.2d 1; United States v. Fisher, D.C., 112 F.Supp. 233. Moreover, the appellant, not having pleaded the statute of limitations, cannot raise it for the first time here.

Applicable ceiling price regulations provided that the seller of a commodity must select a base period upon which a ceiling price would be computed (Supplementary Reg. 17 to CPR 22, 32A CFR, Chap. III); and, that the ceiling price was the highest price at which goods were delivered to the seller's largest buying class of purchasers during the base period. Such ceiling price was required to be consistent in every respect with the base period price, "e. g., it must carry all customary delivery terms, cash, trade, and volume discounts, allowances, premiums and extras, deductions, guarantees, servicing terms and other terms and conditions of sale." CPR 22, § 3(b), 32A CFR, Chap. III. The seller's largest buying class of purchasers was defined as the class of purchasers buying the largest dollar volume during the base period. See CPR 22, § 47, 32A CFR, Chap. III.

The appellant, a wholly owned subsidiary of Phillips Petroleum Company, operated a chemical plant at Etter, Texas, at which it manufactured, among other products, ammonium nitrate, an ingredient for commercial fertilizer. It began operation on March 17, 1950, and selected January 1 through March 31, 1950, as the base period upon which it would establish its ceiling price for ammonium nitrate to its only class of purchasers, that is, manufacturers of commercial fertilizer. In order to meet competition in certain areas of its selling territory, the appellant awarded to its purchasers, who enjoyed more favorable freight rates from competing plants, a freight differential of up to $3 per short ton. During and subsequent to the base period, the ammonium nitrate was accordingly invoiced at the quoted price, e. g. $58 per short ton, less the allowable freight differential. This practice was, however, discontinued on July 1, 1951, and the full quoted price of $58 per short ton was thereafter charged.

The freight differential is said to be a "delivery term" within the meaning of the regulations, the discontinuance of which constituted a violation of the ceiling price regulations.

As we understand the argument of Phillips, it is to the effect that all sales to its one class of customers during the base period was "f. o. b. Etter, Texas"; that the highest base period price at that point was $58 per ton; that the rate dif-

ferential accorded some of its customers during the base period was in practical effect only a "discount" or price variation below the maximum ceiling price; and that the discontinuance of such differential did not, therefore, operate to exceed the established maximum ceiling price. "Delivery term", as used in the regulations, is said to be a part of and not in addition to the ceiling price so that if during the base period a seller sold to some of its customers at the rate of $58 per ton and granted a "discount" or "allowance" of $3 per ton to other customers of the same class, it could consistently with the regulations discontinue the discount without exceeding the established maximum price.

■ The basic fallacy of this argument lies in the failure to recognize the manifest purpose of the price regulations to establish and maintain a consistent price pattern. We agree that the price differentials amounted in practical effect to a discount or allowance below the ceiling price and that they were an inseparable part of and not in addition to the base period price. Indeed, we think the discounts were built into the Phillips' price structure during the base period. And this leads us, we think, to the inescapable conclusion that the freight differentials was a "delivery term" within the meaning of the regulations, or a discount, if you will, which could not be discontinued without violating the spirit and the letter of the applicable regulations. The trial court could reach no other conclusion, and we agree.

■ The trial court's judgment in the amount of $131,362.22 is based on the aggregate amount of the freight dif-ferentials which would have been allowable on all sales made by Phillips in all unfavorable freight areas during the prosecution period. Phillips takes the position that even though Section 3(b) of the regulation (CPR 22) be construed to require the base period price to carry all freight differentials, the overcharges should be limited to the sales made in unfavorable freight areas during the base period; in other words, freight "allowances" or "discounts" on sales during the prosecution period should be confined to the unfavorable rate areas where sales were made during the base period. On this theory the aggregate amount of Phillips' overcharges would be $26,970.87.

The trial court rejected this argument on the premise that the evidence clearly showed an established policy during the base period to grant freight differentials on any sale for delivery in any competitive or unfavorable freight area; and, that the application of Section 3(b) required Phillips to extend that policy to all sales in all unfavorable freight areas after the base period. If, as we have said, the freight differentials became an inseparable part of the base period price so that it could not be discontinued without violating the regulations, it would be manifestly inconsistent with the spirit and purpose of the regulations to allow a seller to depart from the base period price in unfavorable rate areas where he did not sell during the base period. We think a proper construction of the regulation required Phillips to charge the same base period prices to all purchasers similarly situated.

We agree with the trial court's construction and application of the regulation and the judgment is affirmed.